1

2

3

4       **UNITED STATES DISTRICT COURT**

5       **EASTERN DISTRICT OF WASHINGTON**

6   LISA GUTHRIE,                          No. 1:15-CV-03204-MKD

7               Plaintiff,                 ORDER DENYING PLAINTIFF'S
                                           MOTION FOR SUMMARY
8         vs.                              JUDGMENT AND GRANTING
                                           DEFENDANT'S MOTION FOR
9   CAROLYN W. COLVIN,                     SUMMARY JUDGMENT

10  Acting Commissioner of Social Security, ECF Nos. 14, 16

11              Defendant.

12          BEFORE THE COURT are the parties' cross-motions for summary

13  judgment.  ECF Nos. 14, 16.  The parties consented to proceed before a magistrate

14  judge.  ECF No. 5.  The Court, having reviewed the administrative record and the

15  parties' briefing, is fully informed.  For the reasons discussed below, the Court

16  denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

17  16).

18

19

20

1

**JURISDICTION**

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3  1383(c)(3).

4

**STANDARD OF REVIEW**

5      A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported

8  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

11  (quotation and citation omitted).  Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13  citation omitted).  In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4  404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5  analysis.

6      At step four, the Commissioner considers whether, in view of the claimant's

7  RFC, the claimant is capable of performing work that he or she has performed in

8  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9  If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13      At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income on April 24, 2012. Tr. 166-73. In both applications, Plaintiff alleged a disability onset date of July 15, 2011. Tr. 21. The applications were denied initially, Tr. 119-25, and on reconsideration, Tr. 129-33. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 12, 2014. Tr. 41-73. On April 17, 2014, the ALJ denied Plaintiff's claim. Tr. 21-33.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to her disability insurance benefit claim through December 31, 2013. Tr. 23. At step one, the ALJ found that Plaintiff has

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

engaged in substantial gainful activity since January 13, 2013,[1] Tr. 23, but prior to that date, there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 24. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease with back pain and depression. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 26. The ALJ then concluded that, prior to January 13, 2013, Plaintiff had the RFC to perform a range of light work, with additional limitations:

> ... the claimant had the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to 2 hours in an eight-hour workday, and sit without specific limitation. The claimant should not be required to climb, other than ramps and stairs, and she could occasionally stoop. The claimant could sustain work of a simple and routine nature, and occasionally perform more complex tasks, but complex work on a routine basis might well be problematic.

Tr. 27-28.

At step four, the ALJ found that Plaintiff is unable to perform her past

---

[1] The ALJ found Plaintiff testified that she returned to work, as a cashier at a truck stop, in January 2013. Tr. 23 (citing Tr. 44-45). Further, the ALJ found Plaintiff's earnings records show that her income has exceeded SGA since January 13, 2013. Tr. 23-24 (citing Ex. 5D at Tr. 184; Ex. 6D at Tr. 185-86).

relevant work.  Tr. 31.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, prior to January 13, 2013, there were jobs in significant numbers in the national economy that Plaintiff could perform, such as cashier, small products assembler, and fishing rod assembler.  Tr. 32.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from July 15, 2011, through the date of the decision. Tr. 33.

On September 28, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly determined Plaintiff's severe impairments at step two;

2.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

3.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 5.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

# DISCUSSION

## A. Step Two

First, Plaintiff faults the ALJ for finding that the diagnosis of ankylosing spondylitis[2] was not medically determined and for failing to find carpal tunnel syndrome (CTS) a severe impairment at step two of the sequential evaluation. ECF No. 14 at 6-9.

### 1. Ankylosing Spondylitis

Plaintiff contends the ALJ erred by finding that ankylosing spondylitis was not a medically determined impairment. ECF No. 14 at 8-9. The ALJ found that the record contains conflicting evidence and failed to establish that this was a medically determinable impairment. Tr. 25.

A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An impairment must be established by medical

---

[2] Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the vertebrae in the spine to fuse.

www.mayoclinic.org/diseases.../ankylosing-spondylitis/...ovc-20261048.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment).

The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[3] An impairment does not limit an ability to do basic work activities where it "would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

_____

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1    Basic work activities include walking, standing, sitting, lifting, pushing,

2  pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

3  understanding, carrying out and remembering simple instructions; responding

4  appropriately to supervision, coworkers and usual work situations; and dealing

5  with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.1521(b);

6  S.S.R. 85-28.

7    Plaintiff bears the burden to establish the existence of a severe impairment

8  or combination of impairments, which prevent her from performing substantial

9  gainful activity and that the impairment or combination of impairments lasted for

10  at least twelve consecutive months.  20 C.F.R. §§ 404.1512(a); *Edlund v.*

11  *Massanari,* 253 F.3d 1152, 1159-60 (9th Cir. 2011).  However, step two is "a *de*

12  *minimus* screening device used to dispose of groundless claims."  *Smolen*, 80 F.3d

13  at 1290.  "Thus, applying our normal standard of review to the requirements of

14  step two, we must determine whether the ALJ had substantial evidence to find that

15  the medical evidence clearly established that [Plaintiff] did not have a medically

16  severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d

17  683, 687 (9th Cir. 2005).

18    The ALJ is responsible for determining credibility and resolving conflicts in

19  medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

20  (Where medical reports are inconclusive, " 'questions of credibility and resolution

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1  of conflicts in the testimony are solely functions of the Secretary.' ").

2      Here, the ALJ found, for example that although Plaintiff's rheumatologist,

3  Daniel Sager, M.D., never definitively diagnosed ankylosing spondylitis,

4  Plaintiff's primary care physician, Dr. Luera, nonetheless repeated it as a diagnosis

5  in her treatment records.  Tr. 25 (citing Tr. 396) (in July 2012, treatment records by

6  Dr. Sager note that "[a]nkylosing spondylitis remains *theoretically possible* as a

7  significant factor in [Plaintiff's] symptomology... [Plaintiff] understands it is

8  possible she does not have ankylosing spondylitis."[4]) (emphasis added); *compare*

9  *with* Tr. 568 (in March 2014, Dr. Luera lists a diagnosis of ankylosing spondylitis).

10  Inconsistently, in August 2011, Dr. Luera noted that Plaintiff "has seen the

11  rheumatologist who did not believe that she had Ankylosing Spondylitis."  Tr. 344.

12  The ALJ found, as another example, that objective imaging supports only the

13

14  _____

15  [4] Not noted by the ALJ, but also supporting his finding are numerous other records

16  of Dr. Sager's indicating only "possible ankylosing spondylitis" and that the

17  condition is "difficult to objectify."  *See, e.g.*, Tr. 286 (in June 2010, Dr. Sager

18  noted it is a possible diagnosis, but hard to objectify); Tr. 317 (in May 2011, Dr.

19  Sager indicated that if Plaintiff does not have ankylosing spondylitis, she may

20  benefit from a neurosurgical opinion).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1  diagnoses of degenerative disc disease and sacroiliitis.[5]  Tr. 24-25 (citing Tr. 382-

2  83; Tr. 455-56); (a lumbar MRI in December 2011 showed mild degenerative

3  changes at the L4-L5 level, but the image was otherwise unremarkable); Tr. 24

4  (citing Tr. 639) (a pelvic MRI in October 2012 noted bilateral sacroiliitis).  The

5  ALJ found, as a further example, that records from neurologist Dr. Moser in

6  October 2011 indicated that Plaintiff's rheumatologist thought Plaintiff's spine

7  pain was due to sacroiliitis rather than ankylosing spondylitis.  Tr. 25 (citing Tr.

8  350-52).  Because it is the ALJ's responsibility to weigh and assess conflicting

9  medical evidence, the undersigned finds the ALJ properly found that ankylosing

10  spondylosis is not a medically determinable impairment in this case.

11      Even assuming, *arguendo*, that substantial evidence did not support the

12  ALJ's finding that ankylosing spondylitis was not a severe impairment at step two,

13  the error is harmless if the ALJ continues beyond step two and considers relevant

14  limitations at step four.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

15  Here, the ALJ found at step two that degenerative disc disease with back pain was

16  a severe impairment, and the assessed RFC took this into account.  *See* Tr. 27-28

17  _____

18  [5] Sacroiliitis is an inflammation of one or both sacroiliac joints – situated where the

19  lower spine and pelvis connect.  www.mayoclinic.org/diseases-

20  conditions/sacroiliitis/home/ovc-20166357.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

(RFC to sit without specific limitation, and stand and/or walk two hours in an eight-hour workday); Tr. 29 (noting Plaintiff's testimony that her current job requires her to stand eight hours a day and this is very painful).  Plaintiff does not indicate how ankylosing spondylitis, specifically, resulted in limitations beyond those included in the assessed RFC.  Accordingly, any error in this regard at step two is clearly harmless.  *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding ALJ error harmless because it did not affect the result).

### 2.  Carpal Tunnel Syndrome

Plaintiff contends the ALJ should have found at step two that carpal tunnel syndrome (CTS) was a severe impairment.  ECF No. 14 at 6-8.

The ALJ found that the medical record does not establish that CTS is an impairment that has or will limit Plaintiff's functioning for twelve continuous months, as required.  Tr. 25.  *See Krumpelman v. Heckler,* 767 F.2d 586, 587 (9th Cir. 1985) (noting 12-month minimum "continuous period requirement" for disability); *see also Miller v. Colvin*, 174 F. Supp. 3d 1210, 1219 (D. Ariz. 2016) (citing 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months[.]")).  The ALJ found that the objective medical evidence failed to show that CTS caused significant vocational limitations for the requisite

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

twelve months.  Tr. 25.  The ALJ found, for example, that Plaintiff testified she underwent carpal tunnel release in August and September 2012, Tr. 28 (citing Tr. 57), and it is undisputed that Plaintiff's release surgeries were successful.  Tr. 28; s*ee, e.g*., Tr. 400 (after carpal tunnel release on the right hand, Plaintiff indicated that pain in her right hand had resolved); Tr. 57 (Plaintiff testified after the surgeries, the results were "good"); Tr. 429 (carpal tunnel release on the left was performed September 11, 2012 with no complications).  In addition, the ALJ found Plaintiff testified that she has only some occasional numbness on the sides of her palms currently. Tr. 28 (citing Tr. 57).  The ALJ further found, significantly, that Plaintiff has been able to work at SGA levels as a cashier since January 2013.  Tr. 28, 31 (citing Tr. 51-53).

Plaintiff faults the ALJ for failing to find that CTS limited her functioning for twelve continuous months prior to her return to work in January 2013. Specifically, she contends that, because she was first treated for CTS in June 2011, and did not have surgery until August and September 2012, a period longer than one year, the ALJ should have found that CTS was a severe impairment during this closed period.  ECF No. 14 at 7 (citing Tr. 433) (a preoperative report in August 2012 notes recent EMG studies rate Plaintiff's median nerve compression as "moderate to severe").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

The ALJ found, however, that nerve conduction studies in October 2011 documented only mild to moderate bilateral CTS.  Tr. 26 (citing Tr. 350).  The ALJ further found that exam findings, also in October 2011, revealed full range of motion of the shoulders, elbows, and wrists; Tinel's sign and Phalen's maneuver were both negative.  Tr. 25 (citing Tr. 350).  Less than twelve months later, in August and September 2012, Plaintiff underwent bilateral release surgeries.  Tr. 25 (citing Tr. 377, 477).

It is Plaintiff's burden to establish disability.  *Tackett*, 180 F.3d at 1098 (the claimant bears the burden of proof at steps one through four).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.  Here, the ALJ's finding that Plaintiff failed to establish that CTS caused significant vocational limitations for twelve continuous months is supported by the record.

**B. Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 9-14.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that not all of Plaintiff's symptom allegations are credible.  Tr. 28.

*1. Lack of Objective Evidence*

The ALJ found that the objective medical evidence did not support the degree of physical or psychiatric limitation alleged by Plaintiff.  Tr. 29, 31. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments.  *Rollins v. Massanari*, 261 F.3d 853, 857

1    (9th Cir. 2001); 20 C.F.R. §416.929(c)(2); *see also* S.S.R. 96-7p.[6]  With respect to

2    Plaintiff's alleged physical impairments, as the ALJ noted, the medical records did

3    not show symptoms so severe that they prevent work activities within the assessed

4    RFC.  Tr. 31.  The ALJ set out, in detail, the medical evidence regarding Plaintiff's

5    impairments, and ultimately concluded that her allegations were inconsistent with

6    the medical evidence. Tr. 29-31.

7            The ALJ found, for example, that Plaintiff's complaints were inconsistent

8    with the largely benign nature of physical examination and objective findings.  Tr.

9    29.  The ALJ noted several instances in the medical record supporting this

10   conclusion.  Tr. 29 (citing Tr. 350) (on physical examination in October 2011,

11   despite loss of vibration and temperature in the feet, Emily Moser, M.D., found

12   that Plaintiff's gait and station were normal); Tr. 424 (on physical examination in

_____

14   [6] S.S.R. 96-7p was superseded by S.S.R. 16-3p, effective March 28, 2016, *see* 81

15   Federal Register 15776-01.  Contrary to Plaintiff's characterization, ECF No. 14

16   at 10-11, the new ruling provides that the consistency of a claimant's statements

17   with objective medical evidence and other evidence is a factor in evaluating a

18   claimant's symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not

19   effective at the time of the ALJ's decision and therefore does not apply in this

20   case.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

1    May of 2012, Henry Kim, M.D., noted no significant tenderness of the lumbar

2    spine, but severe limitation with extension; however, Dr. Kim also found that

3    straight leg raising was negative, hip range of motion was intact on both sides, and

4    neurologically, Plaintiff demonstrated intact motor strength in the lower

5    extremities).  The ALJ further found that many other treatment records were

6    devoid of any significant examination findings.  Tr. 29 (citing Tr. 406) (in July

7    2012, treating physician Dr. Luera noted that Plaintiff's fibromyalgia pain[7] was

8    much better than the prior month; the only examination finding indicated was

9    "poor posture"); (citing Tr. 400) (in September 2012, Dr. Luera noted pain is

10   improved; again the only objective exam finding noted is "poor posture").  With

11   respect to objective findings, the ALJ noted, for example, that a December 2011

12   lumbar MRI showed mild degenerative changes at the L4-L5 level, but was

13   otherwise unremarkable.  Tr. 24 (citing Tr. 383-84).  Because an ALJ may discount

14   pain and symptom testimony based on lack of medical evidence, as long as it is not

15   the sole basis for discounting a claimant's testimony, the ALJ did not err when he

16

17   ———————————————

18   [7] Plaintiff does not challenge the ALJ's finding at step two that fibromyalgia is not

19   a medically determinable impairment, Tr. 25; accordingly, the Court does not

20   address it.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1  found Plaintiff's complaints exceeded and were not supported by objective and

2  physical examination findings.

3      With respect to mental health related impairments, the ALJ found that the

4  objective evidence did not show that Plaintiff's psychiatric impairments would

5  prevent her from working.  Tr. 31.  The ALJ found, for example, that a

6  consultative examination performed by Pamela Miller, Ph.D., in October 2012

7  revealed essentially normal functioning.  Tr. 31 (citing Tr. 487-88) (noting, in part,

8  that memory is normal, and concentration and attention are good).  The ALJ found

9  that Dr. Miller performed a thorough interview and conducted a mental status

10 examination; she diagnosed major depressive disorder and assessed a GAF of 62,[8]

11 indicating no more than moderate (mild) symptoms or functional impairment.  Tr.

12 31 (citing Tr. 488).  The ALJ further found that Dr. Miller opined Plaintiff is able

13 to understand and remember instructions; maintain attention and concentration;

14 engage in normal social interactions; and adapt to change.  Tr. 31 (citing Tr. 488).

15 The ALJ also found that, although Plaintiff usually functions well, Dr. Miller

16 _____

17 [8] A Global Assessment of Functioning (GAF) of 62 indicates mild symptoms or

18 some difficulty in social, occupational, or school functioning.  *American*

19 *Psychiatric Ass'n*, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL

20 DISORDERS, Fourth Ed. at 32.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

opined that when she is in pain or depressed, Plaintiff often avoids people.  Tr. 31 (citing Tr. 488).

The ALJ further found that Dr. Miller's opinion is consistent with Plaintiff's history of minimal treatment.  Tr. 31.  An ALJ may consider lack of treatment in his credibility determination.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ found, for instance, that Plaintiff testified she has never undergone counseling and had not taken any psychotropic medication (prescribed by Dr. Luera) for five to six months, both indicating that she suffers no more than mild symptoms or functional limitations.  Tr. 31 (citing Tr. 62-63).  Moreover, the ALJ further found that, as another example, Plaintiff testified that she was working full-time (as a cashier at a busy truck stop), another strong indication that Plaintiff does not suffer disabling psychological symptoms or limitations.  Tr. 31 (citing Tr. 51-52).  The ALJ's finding that Plaintiff's allegations of disabling mental health symptoms are inconsistent with the overall findings is supported by substantial evidence.

### 2. Improvement with Treatment

Next, the ALJ found that appropriate treatments and medication have been effective, indicating that Plaintiff's more dire symptom complaints are less than credible.  Tr. 29.  The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3),

416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits). The ALJ found, for example, that in January 2012, treating physician Dr. Luera noted that Plaintiff reported improvement in her pain level following an increase in the prescribed dose of hydrocodone; Plaintiff stated that this allowed her to both move better and more often. Tr. 29 (citing Tr. 369). The ALJ further noted that at the same appointment, Plaintiff reported to Dr. Luera that she was able to walk her dog more often and had volunteered to paint a local church, further indicating the effectiveness of the increase in medication in controlling Plaintiff's symptoms. Tr. 29 (citing Tr. 369). Moreover, the ALJ found that in August 2013, Dr. Luera noted that since changing Plaintiff's medication to Percoset, Plaintiff reported she felt much better and, significantly, was able to work full time. Tr. 29 (citing Tr. 582). As a further example, the ALJ also found that Plaintiff reported significant improvement in her hand symptoms after carpal tunnel release surgery. Tr. 29 (citing Tr. 400) (Plaintiff reported the numbness and tingling in her right hand were gone after release surgery); *see also* Tr. 57 (Plaintiff testified that her results following surgery were "good."). This was a clear and convincing reason to find Plaintiff less than credible.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

1    *3. Daily Activities*

2    The ALJ found that Plaintiff's subjective complaints are inconsistent with

3    her daily activities.  Tr. 26, 29.  If a claimant is able to spend a substantial part of

4    her day engaged in pursuits involving the performance of physical functions that

5    are transferrable to a work setting, a specific finding as to this fact may be

6    sufficient to discredit a claimant's allegations.  *Morgan v. Comm'r of Soc. Sec.*

7    *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair,* 885 F.2d at 603 (9th Cir.

8    1989)).  Alternatively, when activities "contradict claims of a totally debilitating

9    impairment," an ALJ may discredit a claimant's testimony.  *Molina,* 674 F.3d at

10   1112-13 (internal quotation marks and citations omitted).

11   Here, the ALJ found that Plaintiff reported to Pamela Miller, Ph.D., during

12   an October 2012 consultative evaluation that, when feeling physically well, she

13   was able to persist and independently performed most daily activities.  Tr. 26

14   (citing Tr. 488).  The ALJ found, for example, that Plaintiff reported she was able

15   to take care of her personal hygiene and grooming, complete household tasks,

16   cook, drive, purchase groceries, use the phone, and manage money.  Tr. 26 (citing

17   Tr. 488).  As another example, the ALJ found that Plaintiff reported in an undated

18   function report that she cared for pets, had no difficulty with self-care activities,

19   prepared simple meals, and performed household chores, including cleaning and

20   laundry.  Tr. 26 (citing Tr. 221-23).  As another example, that in the same function

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

1   report, Plaintiff indicated that she could count change, pay bills, handle a savings

2   account, and use a checkbook/money orders.  Tr. 26 (citing Tr. 223).  In addition,

3   Plaintiff further stated that she visited friends and her aunt occasionally, and went

4   to church and the store when she felt good.  Tr. 27 (citing Tr. 224).  Moreover, in

5   January 2012, Plaintiff told Dr. Luera that an increase in prescribed pain

6   medication allowed her to move better and more often; she was able to walk her

7   dog more and, as noted, Plaintiff even reported that she had volunteered to paint a

8   local church.  Tr. 29 (citing Tr. 369).  The ALJ also found that after another

9   medication change in August 2013, Plaintiff told Dr. Luera that she felt much

10  better and she was able to work full-time.  Tr. 29 (citing Tr. 582).  The ALJ

11  provided another clear and convincing reason to find Plaintiff's symptom

12  testimony less than fully credible.

13       Plaintiff alleges that her "more than reasonable request for a closed period of

14  benefits should speak to her credibility and honest pursuit of her entitled benefits."

15  ECF No. 14 at 14.  Plaintiff offers a different interpretation of the evidence.

16  However, where the evidence is susceptible to more than one rational

17  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

18  must be upheld.  *Thomas*, 278 F.3d at 954 (citing *Morgan,* 169 F.3d at 599.

19       In sum, the ALJ provided specific, clear and convincing reasons, supported

20  by the record, for rejecting Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

**C. Medical Opinion Evidence**

Plaintiff next faults the ALJ for improperly weighing the medical opinion evidence of treating physician Natalia Luera, M.D., who offered four opinions of Plaintiff's functioning.  In August 2011, Dr. Luera assessed an RFC for sedentary work.  Tr. 30 (citing Tr. 340); in October 2011, an RFC for light work (citing Tr. 345); in March 2012, again an RFC for light work; and in March 2014, an RFC for sedentary work but with three days of absenteeism from work per month (citing Tr. 569).  The ALJ gave the last opinion little weight.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

1    If a treating or examining physician's opinion is uncontradicted, an ALJ may

2    reject it only by offering "clear and convincing reasons that are supported by

3    substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

4    "However, the ALJ need not accept the opinion of any physician, including a

5    treating physician, if that opinion is brief, conclusory and inadequately supported

6    by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

7    (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

8    examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

9    may only reject it by providing specific and legitimate reasons that are supported

10   by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

11   31.

12   This Court find the ALJ provided several specific and legitimate reasons,

13   supported by substantial evidence, for discrediting some of the assessed

14   limitations.

15   *1. Dr. Luera*

16   Plaintiff contends the ALJ erred by rejecting the March 2014 opinion of

17   treating physician Natalia Luera, M.D.  ECF No. 14 at 14 (citing Tr. 30).  Here,

18   because Dr. Luera's opinion is contradicted in part by the agency reviewing

19   sources, Tr. 98-114, the ALJ was required to provide specific and legitimate

20   reasons for discounting it.  *Bayliss,* 427 F.3d at 1216.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

1    In March 2014, Dr. Luera opined that Plaintiff needed to lie down during the

2    day, and would miss three or more days of work each month.  Tr. 569.  The ALJ

3    gave greater credit to Dr. Luera's assessed RFC for light work (Tr. 345) than for

4    sedentary, Tr. 30 (citing Tr. 357), and rejected Dr. Luera's opinion of Plaintiff's

5    likely absenteeism.  Tr. 39 (citing Tr. 568-70).

6    First, the ALJ found that Dr. Luera's opinions are inconsistent.  Tr. 30-31.

7    An ALJ may properly reject opinions that are internally inconsistent.  *Nguyen v.*

8    *Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996).  An ALJ is not obliged to credit

9    medical opinions that are unsupported by the medical source's own data or

10   contradicted by the opinions of other examining sources.  *Tommasetti v. Astrue,*

11   533 F.3d 1035, 1041 (9th Cir. 2008).  Here, the ALJ found that, in the past, Dr.

12   Luera had assessed an RFC for light work; however, there is no objective evidence

13   in the record to support that Plaintiff's condition had greatly deteriorated by the

14   time of Dr. Luera's March 2014 opinion.  Tr. 30 (*comparing* Tr. 345 (in August

15   2011, Dr. Luera assessed an RFC for light work); Tr. 357 (in March 2012, Dr.

16   Luera again assessed an RFC for light work); *with* Tr. 569 (in March 2014, Dr.

17   Luera assessed an RFC for less than a full range of sedentary work)).  Similarly,

18   whether Dr. Luera assessed light or sedentary work, she opined that Plaintiff's

19   participation in training or employment activities was nonetheless appropriate, Tr.

20   30 (citing Tr. 354), which also appears inconsistent with her opinion that Plaintiff

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

1   is more severely limited.

2       In addition, the ALJ found that Dr. Luera's extreme assessments set forth in

3   the March 2014 opinion were inconsistent with her own lack of objective findings

4   on examination.  Tr. 30.  The ALJ found that the only objective findings noted by

5   Dr. Luera were decreased range of motion in the lumbar spine, with muscle tension

6   on one occasion.  Tr. 30 (citing Tr. 342, 344) (exam findings in August 2011 note

7   decreased lumbar spine range of motion); Tr. 347, 349 (exam findings in October

8   2011 are the same); (citing Tr. 355, 357) (exam findings in March 2012 also note

9   muscle tension and spasms).  This was a specific, legitimate reason to give limited

10  weight to Dr. Luera's opinion.

11      Next, the ALJ found that Dr. Luera's opinions are inconsistent with other

12  opinions and evidence in the record indicating that Plaintiff is able to function at a

13  higher level than that assessed by Dr. Luera. Tr. 30.  An ALJ may discredit a

14  physician's opinions that are unsupported by the record as a whole.  *Batson v.*

15  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ

16  found, for example, that agency reviewing physician Dr. Ignacio reviewed the

17  evidence, including treating records and Plaintiff's reported activities, and opined

18  that Plaintiff was able to sit, stand and/or walk six hours in an eight hour day.  Tr.

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

29-30 (citing Tr. 98).[9]  The ALJ further found that the objective evidence,

including fairly benign spinal imaging, also contradicted Dr. Luera's more limited

assessment of Plaintiff's functioning. Tr. 30 (citing Tr. 382-83, 455-56) (December

2011 lumbar MRI showed only mild degenerative changes at the L4-5 level, and

the image was otherwise unremarkable); Tr. 24 (citing Tr. 639) (October 2012

pelvic MRI noted bilateral sacroiliitis).  This was a specific, legitimate reason to

give limited weight to Dr. Luera's opinion.

 The ALJ also found that Dr. Luera's opinion is inconsistent with Plaintiff's

actual functioning.  An ALJ may discount an opinion that is inconsistent with a

claimant's reported functioning.  *Morgan*, 169 F.3d at 601-602.  Dr. Luera opined

in March 2014 that Plaintiff could not sustain even sedentary work. Tr. 30 (citing

Tr. 569).  Yet, as the ALJ found, Dr. Luera rendered this opinion more than a year

after Plaintiff "had been *working* on a consistent basis."  Tr. 30 (italics original).

The ALJ provided another specific, legitimate reason for affording Dr. Luera's

opinion limited weight.

---

[9] The ALJ noted that Dr. Ignacio did not know that, at the time of the hearing,

Plaintiff testified that she was working at a job that required her to stand eight

hours a day and "it is very painful and exhausting"; as a result, the ALJ assessed

greater restrictions than Dr. Ignacio.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

*2. Dr. Palasi*

Next, Plaintiff alleges the ALJ erred by failing to discuss or explicitly reject the opinion of Myrna Palasi, M.D.  ECF No. 14 at 17 (citing Tr. 358).

On April 2, 2012, Dr. Palasi performed a limited record review as part of Plaintiff's GAU/GAX state benefit application.  Tr. 358 (citing Dr. Luera's March 2012 opinion at Tr. 357).  Although Dr. Luera opined in March 2012 that Plaintiff could perform light work, Tr. 357, and Dr. Palasi reviewed the March 2012 opinion, Dr. Palasi stated "[d]ue to the severity of this [claimant's] condition, recommend a less than sedentary RFC."  Tr. 358.  The ALJ did not discuss Dr. Palasi's opinion.

Plaintiff contends the ALJ erred by failing to discuss Dr. Palasi's opinion. In reaching a step five decision, the Secretary may not reject "significant probative evidence" without explanation.  *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (citing *Vincent v. Heckler*, 739 F.2d 1393 1395 (9th Cir. 1984)).  Plaintiff asserts that *McCartey v Massanari*, 298 F.3d 1072, 1076 (9th Cir 2002), is analogous authority because it addresses the "great weight" that an ALJ must ordinarily give to a Veterans Administration determination of disability.  ECF No. 14 at 18; ECF No. 17 at 8.  Defendant contends that Dr. Palasi's "opinion" is not significant probative evidence because it is offered by a state agency, meaning that it is entitled to less weight because it need not conform to the standards required by the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

Social Security Act,[10] and *McCartey* is limited to federal benefits programs. Alternatively, Defendant contends that any error by the ALJ in failing to address Dr. Palasi's opinion is harmless because, rather than an opinion that Plaintiff is disabled, Dr. Palasi simply lists diagnoses and "recommends" sedentary work. ECF No. 16 at 17, n. 7 (citing Tr. 358).

The Court does not discern harmful error in the ALJ's failure to consider Dr. Palasi's opinion.  Defendant is correct that Palasi's "opinion" does not assess any functional limitations.  Rather, as noted, Dr. Palasi lists two diagnoses:  bilateral

---

[10] Defendant cites 20 C.F.R. § 404.1504 ("a determination made by another agency that you are blind or disabled is not binding on us."); *Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985) (the Court noted that "[p]rior to implementation of the SSI program, the federal government assisted state aid programs for the disabled with matching funds (citation omitted.). . . The SSI program established uniform standards of eligibility which, in some cases, were more stringent than the requirements for the state programs that SSI replaced."); *Little v. Richardson*, 471 F.2d 715, 716 (9th Cir. 1972) (when determining entitlement to Social Security disability benefits, the Secretary is in no way bound by prior state disability determinations).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 32

1   sacroiliitis and ankylosing spondylitis[11] and "*recommend[s] a less than sedentary*

2   RFC." Tr. 358 (italics added). Defendant is correct that an ALJ may reject a

3   medical opinion when the opinion does not include a specific assessment of a

4   claimant's functional capacity. *See Johnson v. Shalala,* 60 F.3d 1428, 1443 (9th

5   Cir. 1995); *see also Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1223

6   (9th Cir. 2010) (where physician's report did not assign any specific limitations or

7   opinions in relation to an ability to work, "the ALJ did not need to provide 'clear

8   and convincing reasons' for rejecting [the] report because the ALJ did not reject

9   any of [the report's] conclusions"); *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

10  1985) (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding

11  of disability."). Because Dr. Palasi did not include a specific assessment of

12  Plaintiff's functional capacity, Tr. 358, her report was not significant probative

13  evidence that the ALJ was required to discuss.

14      Second, Dr. Palasi's record review is not significant probative evidence

15  because it states that is based on the review of a single record – Dr. Luera's March

16  2012 opinion that Plaintiff was capable of light work. Tr. 358 (referring to Tr.

_____

18  [11] For the reasons addressed by the Court herein, the diagnosis of ankylosing

19  spondylitis was not medically established, making Dr. Palasi's opinion even less

20  significant and probative.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 33

357).  The record does not indicate any basis for Dr. Palasi's apparent

disagreement with the only record she reviewed.  It is unclear why Dr. Palasi

"recommended" sedentary work rather than light, the RFC that Dr. Luera had

assessed.  An ALJ may not credit the opinion of a reviewing physician over that of

a treating physician, nor is an ALJ required to credit medical opinions that are

unsupported by clinical findings, *Thomas*, 278 F.3d at 957.  This Court finds any

error by the ALJ in failing to discuss Dr. Palasi's opinion was clearly harmless.

*Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (citing *Curry,* 925 F.2d at 1131)

(finding ALJ error harmless because it did not affect the result)).

In sum, the ALJ assessed an RFC for a range of light work, Tr. 27-28, which

credits in part the opinions of treating physician Dr. Luera (Tr. 345-49, 353-57);

reviewing physicians Dr. Ignacio (Tr. 98-99, 111-12) and Dr. Gilbert  (Tr. 101,

114); examining neurologist Dr. Moser (Tr. 350); and examining physician Dr.

Miller (Tr. 488).  Tr. 29-31.  In addition, the ALJ found that the assessed RFC was

consistent with the imaging studies, Tr. 30 (citing Tr. 568, 639) (noting an MRI in

October 2012 showed bilateral sacroiliitis), and with Plaintiff's normal gait,

strength in the lower extremities, and lack of neurological deficits on examination).

Tr. 29 (citing Tr. 350, 424).

The ALJ properly weighed the medical evidence

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

1

## CONCLUSION

2      After review, the Court finds that the ALJ's decision is supported by

3 substantial evidence and free of harmful legal error.

4      **IT IS ORDERED:**

5      1. Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

6      2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED**.

7      The District Court Executive is directed to file this Order, enter

8 **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

9 the file.

10     DATED this 23rd day of January, 2017.

11

12                               _S/ Mary K. Dimke_
                                 MARY K. DIMKE
                                 U.S. MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 35